# EXHIBIT D

## Work Product and Metadata Analysis of Turnover Production[1]

Ari Teman v. Alan S. Lewis, Nathaniel Z. Marmur, Carter Ledyard & Milburn LLP,
and The Law Offices of Nathaniel Z. Marmur, PLLC

---

This analysis summarizes the attorney-created files and metadata reflected in the turnover production provided by Alan S. Lewis, Nathaniel Z. Marmur, Carter Ledyard & Milburn LLP, and related personnel.

The turnover appears heavily weighted toward passive record materials (PDFs, transcripts, court filings, downloaded materials, and preexisting litigation documents) rather than substantive attorney work product generated during the representation.

The metadata and chronology reflected below materially support the conclusion that:

- little substantive appellate work was performed for extended periods of time;
- meaningful merits drafting activity did not substantially begin until late January 2022;
- there is minimal evidence of iterative drafting, supervision, or collaborative attorney review;
- there is little evidence of substantial draft exchange between Lewis and Marmur;
- multiple drafts appear to consist largely of recycled or repackaged text;
- there is minimal evidence of organized appellate preparation proportionate to a premium criminal appellate engagement;
- the final drafting activity appears compressed into a narrow window immediately before withdrawal; **and**
- the three principal appellate brief files exhibit anomalous metadata patterns — including blank identity fields, TotalTime of zero, and extremely compressed creation-to-modification windows — that are inconsistent with organically developed litigation drafts and warrant further investigation.

### I. Overall Composition of Production

Approximate composition of turnover production:

| File Type | Approx. Count | Observation |
|---|---|---|

| PDFs | 235 | Predominantly passive record materials, transcripts, ECF filings, discovery, and downloaded materials |
|------|-----|------------------------------------------------------------------------------------------------------|
| DOCX files | 45 | Limited universe of actual editable attorney work product |
| MSG email files | 2 | Minimal preserved attorney email exchange |
| Other system files | 2 | Non-substantive |

**Observation:** The overwhelming majority of the turnover consists of preexisting litigation materials rather than original attorney-generated analysis or substantive drafting.

## II. Metadata Chronology

### A. Retention Period

Representation began approximately late August to early September 2021. Despite the premium fee paid, the metadata reflects remarkably little substantive appellate drafting activity during September, October, November, and most of December 2021.

### B. September–October 2021

### 2021.09.10 – Retention / Administrative Letter

| File | Creator | Notes |
|------|---------|-------|
| 2021.09.10 Letter | Madelyn White | Administrative correspondence only |

- *No substantive appellate work reflected.*
- *No merits analysis.*
- *No appellate strategy documents.*
- *No issue memoranda.*

### 2021.10.14 – Briefing Schedule Letter

| File | Creator | Notes |
|------|---------|-------|
| 2021.10.14 Letter re Briefing Schedule | Madelyn White | Administrative filing-related correspondence |

- *Still no substantive appellate drafting reflected.*
- *No research memoranda.*
- *No issue outlines.*
- *No collaborative attorney draft review.*

## III. Absence of Substantive Work During Fall 2021

The metadata strongly suggests that little meaningful merits work was performed during:

- September 2021
- October 2021
- Most of November 2021
- Most of December 2021

This is particularly notable given:

- the size of the fee;
- the criminal nature of the appeal;
- repeated extension requests; and
- the complexity represented to the client.

### IV. First Evidence of Transcript Review Appears Months After Retention

### 2021.11.29 – Trial Transcript Notes

| File | Creator | Notes |
|------|---------|-------|
| asl notes from trial transcript | Nathaniel Marmur | First apparent substantive transcript review notes |

- *Created more than three months after retention.*
- *No indication of extensive collaborative review.*
- *No parallel memorandum from Lewis.*
- *No evidence of iterative appellate issue development.*

### V. December 2021 Materials

### 2021.12.26 – Arraignment Notes

| File | Creator | Notes |
|------|---------|-------|
| arraignment notes | Nathaniel Marmur | Limited isolated notes |

- *Sparse record review activity.*
- *No evidence of broader appellate framework.*
- *No evidence of coordinated issue analysis.*

### VI. January 2022 – First Actual Merits Work Appears

### 2022.01.18 – Possible Bases for Appeal

| File | Creator | Notes |
|------|---------|-------|
| Possible Bases for Appeal | Nathaniel Marmur | First identifiable issue memorandum |

- *Created approximately five months after retention.*
- *Suggests issue identification process substantially delayed.*
- *No evidence of extensive legal research package.*
- *No corresponding collaborative memorandum from Lewis.*

**2022.01.22 – To-Do Lists**

| File | Creator | Notes |
|---|---|---|
| ASL 1.22.22 To Do List | Nathaniel Marmur | Rudimentary task list |
| ASL to-do list | Nathaniel Marmur | Minimal content |

Representative tasks include:

- "Prepare Appendix"
- "Draft fact sections"
  - *These are basic organizational tasks, not sophisticated appellate analysis.*
  - *The existence of rudimentary to-do lists this late in the representation supports the conclusion that the appeal preparation remained underdeveloped months after retention.*

## VII. January 28, 2022 – First Merits Drafts

**2022.01.28 – Draft Brief Materials**

| File | Creator | Notes |
|---|---|---|
| Draft IAC Section | Nathaniel Marmur | First substantive argument draft |
| Draft Constructive Amendment Section | Nathaniel Marmur | Merits drafting begins |
| Draft Appeal Brief | Nathaniel Marmur | Initial assembly-stage draft |

- *First substantial merits drafting activity appears approximately five months after retention.*
- *No meaningful earlier drafting trail appears in production.*
- *No extensive comment history.*
- *No substantial tracked collaboration between Lewis and Marmur.*
- *No meaningful evidence of layered review.*

## VIII. February 2022 – Compressed Drafting Window

**2022.02.08 – Continued Draft Assembly**

| File | Creator | Notes |
|---|---|---|

| Draft brief sections | Nathaniel Marmur | Additional assembly-stage drafting |
|---|---|---|
| N. Marmur draft brief | Nathaniel Marmur | Limited revision history |

- *Large portions of work appear assembled in compressed timeframes.*
- *Minimal revision counts.*
- *Minimal evidence of extensive editing cycles.*
- *Minimal evidence of iterative appellate refinement.*

### 2022.02.15 – IAC Drafting Continues

| File | Creator | Notes |
|---|---|---|
| Draft IAC Point | Nathaniel Marmur | Continued drafting shortly before deadline |

- *Critical appellate sections still actively being drafted within days of filing deadline.*
- *Supports conclusion that merits work remained incomplete late into representation.*

### 2022.02.16 – Appeal Brief v1 Delivered

| File | Creator | Notes |
|---|---|---|
| Appeal Brief v1 | *See Section XII-A* | Final draft stage — anomalous metadata pattern |

- *Draft delivered only shortly before deadline.*
- *Minimal revision history.*
- *Identity metadata fields blank. See Section XII-A.*

### 2022.02.22 – Final Assembled Appeal Brief

| File | Revision Count | Observation |
|---|---|---|
| Appeal Brief (02.22.22) | 1 | Single-save metadata pattern |

- *Revision count of 1 is inconsistent with what would ordinarily be expected from a heavily developed appellate brief after months of work.*
- *Multiple sections reflect similar compressed metadata patterns.*
- *Identity metadata fields blank. See Section XII-A.*

## IX. Lack of Collaborative Drafting Between Lewis and Marmur

One of the most notable features of the turnover is the apparent absence of meaningful collaborative drafting activity between Alan Lewis and Nathaniel Marmur.

The production appears to contain:

- minimal tracked changes;
- minimal comments;
- minimal iterative review history;

- minimal email exchange regarding substantive drafting;

- minimal back-and-forth draft circulation;

- minimal evidence of substantive supervisory markup; and

- minimal evidence of layered strategic review.

Only extremely limited comment metadata appears in the production. There appears to be no robust drafting chain demonstrating:

- extensive principal review;

- repeated issue refinement;

- collaborative appellate editing;

- coordinated strategic revision; or

- intensive supervision consistent with a premium criminal appellate engagement.

Instead, the metadata reflects largely isolated drafting activity concentrated primarily under Marmur's authorship, with limited visible substantive integration or review by Lewis.

## X. Recycled Content Across Drafts

The production reflects substantial reuse of materially identical language across multiple draft versions. This is particularly notable in:

- ineffective assistance sections;

- statement-of-facts materials; and

- certain appellate argument sections.

  - *Multiple files bearing different dates contain substantially overlapping language.*

  - *The metadata does not reflect extensive substantive redevelopment.*

  - *Several later-stage drafts appear closer to repackaged or reformatted versions than independently developed revisions.*

## XI. Missing Materials Normally Expected in a Major Criminal Appeal

The turnover notably lacks many categories of materials ordinarily expected in a heavily worked federal criminal appeal, including:

- detailed issue memoranda;

- organized appellate strategy memoranda;

- substantial legal research packages;

- annotated transcript binders;

- witness credibility analyses;

- appellate chronology memoranda;

- extensive internal attorney notes;

- privilege-review memoranda;

- substantial attorney-to-attorney strategy correspondence;

- extensive tracked revisions;
- iterative draft chains;
- detailed case law comparison memoranda; and
- extensive client-update analysis.

## XII. Overall Conclusion

The metadata and work product chronology reflected in the turnover materially support the conclusion that:

1. little substantive appellate work was performed during the first several months of the engagement;

2. meaningful merits drafting activity appears substantially delayed until late January 2022;

3. the drafting process appears compressed into a narrow pre-deadline window;

4. there is minimal evidence of substantial collaborative drafting or supervisory review between Lewis and Marmur;

5. there is minimal evidence of extensive iterative appellate development;

6. the production lacks many categories of materials ordinarily associated with a thoroughly prepared federal criminal appeal;

7. much of the turnover consists of passive record materials rather than attorney-generated analysis;

8. the production appears inconsistent with the level of sustained substantive work ordinarily expected for a premium six-figure criminal appellate engagement; and

9. the three principal appellate brief files — delivered in the final days of the engagement — exhibit anomalous metadata patterns described in Section XII-A below that are inconsistent with organically developed litigation documents and that warrant targeted discovery into native files, version histories, and document management system records.

### XII-A. Anomalous Metadata Pattern in Final Brief Files — Potential File Reconstruction or Sanitization

The three principal appellate brief files produced by Defendants — the only documents that purport to represent the culmination of the engagement — share a distinctive and anomalous metadata pattern that is atypical of organically developed litigation drafts.

**The three files and their metadata are as follows:**

| File | Created (UTC) | Modified (UTC) | Window | Pages | TotalTime |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| Appeal Brief v1 (Feb. 16, 2022) | 2022-02-16 23:45 | 2022-02-16 23:51 | **6 minutes** | 56 | **0** |
| POINT I Brief (Feb. 17, 2022) | 2022-02-17 15:52 | 2022-02-17 15:55 | **3 minutes** | 19 | **0** |
| Final Appeal Brief (Feb. 22, 2022) | 2022-02-22 20:38 | 2022-02-22 22:25 | **107 minutes** | 65 | **0** |

**Identity fields blank across all three files:**

- **Creator:** blank / null
- **LastModifiedBy:** blank / null
- **Company:** blank / null

**Fields populated across all three files:**

- Created timestamp
- Modified timestamp
- Application: Microsoft Office Word
- AppVersion: 16.0000
- Page count, word count, character count

**Analysis:**

This pattern — blank identity fields across all three final brief files, TotalTime of zero on documents totaling 140 pages, and creation-to-modification windows of 3 to 6 minutes for documents of 19 and 56 pages respectively — is not consistent with ordinary document development in a working litigation environment.

In a normally developed litigation document, the following would be expected:

- Creator and LastModifiedBy fields populated from the authoring attorney's Microsoft Office profile;
- TotalTime accumulating minutes and hours across drafting sessions;
- Creation and modification timestamps separated by days or weeks of iterative drafting; and
- Revision counts reflecting multiple save sessions.

The observed pattern is instead consistent with one or more of the following:

- **File reconstruction:** content copied or pasted into a new blank document shell, which resets identity fields and TotalTime while preserving structural metrics auto-populated by Word on save;
- **Export or conversion workflow:** documents exported or converted through a process that strips user identity metadata;

- **Manual or automated metadata removal:** targeted removal of identity fields while preserving document structure; or

- **Assembly from recycled content:** documents assembled from preexisting text in a compressed window without meaningful new drafting, consistent with the recycled-content findings in Section X.

Plaintiff does not assert at this stage which explanation applies. However, the pattern is sufficiently anomalous — and the files sufficiently central to the case — that it raises substantial questions regarding the preservation and development history of the files. The absence of identity metadata on the three documents that represent the entire produced appellate work product, combined with TotalTime of zero and creation windows of minutes for documents of 19 to 56 pages, is a material irregularity that warrants explanation.

**This finding is a subject of targeted discovery.** Plaintiff intends to seek: native files with complete embedded metadata from all attorneys and personnel involved; document management system logs; version histories and autosave records; and any records reflecting the workflow by which these files were created, assembled, or transmitted. These materials cannot be obtained from the production as currently constituted and represent a core reason why a discovery stay would be prejudicial to Plaintiff.

---

[1] The metadata values reflected in this analysis were extracted directly from the underlying DOCX files produced by Defendants. The analysis and characterization of those values was prepared with the assistance of AI-based analytical tools, including ChatGPT (OpenAI), Claude (Anthropic), and Gemini (Google), and was reviewed and verified by Plaintiff.