**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ARI TEMAN,
*Plaintiff, Pro Se,*
v.
ALAN S. LEWIS, NATHANIEL Z. MARMUR,
CARTER LEDYARD & MILBURN LLP, and
THE LAW OFFICES OF NATHANIEL Z. MARMUR, PLLC,
Defendants.

Case No. 25-cv-08220 (LJL)

### PLAINTIFF'S REPLY TO DEFENDANTS' MAY 13, 2026 LETTER

May 13, 2026

The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Dear Judge Liman:

Plaintiff Ari Teman respectfully submits this brief reply to Defendants' May 13, 2026 letter (ECF No. 32) in advance of the Initial Pretrial Conference scheduled for May 20, 2026.

### I. The Causation Argument Does Not Reach the Harms That Had Already Accrued

#### A. *Extended Home Confinement — More Than Five Months of Preventable Delay*

Defendants' failure to perform any meaningful appellate work for approximately five months directly extended Plaintiff's period of home confinement on bond. Had Defendants performed the work for which they were retained and paid, the appeal would have proceeded on a timely basis. Instead, Defendants' inactivity extended Plaintiff's home confinement during the COVID pandemic by approximately five months — a severe liberty restriction during which every month mattered.

The harm was not limited to those five months. When Plaintiff terminated Defendants and retained successor counsel, successor counsel did not receive a well-developed file from attorneys who had been deeply immersed in the record. They received a disorganized file from attorneys who — by Defendant Lewis's own contemporaneous admission — had not even finished reading the trial transcripts after four months of engagement. The transition that should have occurred when the matter was fresh — when trial counsel was readily available, when the record was recent, and when institutional knowledge of the case was at its peak — never happened. Defendants consumed that window. Successor counsel was therefore required to spend additional months reconstructing an understanding of the record from scratch, extending the total period of preventable delay well beyond five months. No successor counsel could retroactively restore that lost transition opportunity.

#### B. *Lost Opportunity to Seek Compassionate Release or Alternative Confinement*

Independently, by wasting those five months, Defendants deprived Plaintiff of the opportunity to seek compassionate release or, at minimum, a non-custodial sentencing alternative based on his established immunocompromised status. During the COVID pandemic, courts were actively considering such relief for medically vulnerable individuals. Judge Engelmayer stated explicitly on the record that Plaintiff's trial counsel had "established" that Plaintiff was immunocompromised. That window was time-sensitive and narrowed with each passing month. Defendants' inactivity foreclosed or materially impaired Plaintiff's ability to pursue it. No successor counsel could retroactively restore that opportunity.

### C. Damages Continued Through and After Incarceration

Plaintiff was subsequently incarcerated. Damages caused by Defendants' conduct continued to accrue through that period and beyond and could not be fully known or quantified until after it concluded, further underscoring the factual nature of Defendants' limitations arguments.

### D. Additional Categories of Harm

The Rule 33 motion — for which Defendants possessed the necessary materials — has never been ruled on the merits to this day. Potential post-conviction and evidentiary motions were delayed while evidence and witnesses became less accessible. Successor counsel, inheriting a disorganized file with the anomalous metadata patterns documented in Exhibit D, required additional months before meaningful work could resume. Defendants' causation argument does not reach any of these categories.

### E. Diligence During the Engagement Period

Defendant Lewis acknowledged in writing on January 6, 2022 that he had not read the trial transcript after four months of engagement. Publicly available records reflect that Defendant Marmur was an active competitive poker tournament participant during the relevant period, as documented in Exhibit A to Plaintiff's proposed Case Management Plan. These facts are relevant to the timeline and extent of work performed during the engagement period and warrant targeted discovery.

## II. The "53-Page Brief" Argument Is Contradicted by the Metadata Already Before the Court

### A. Metadata Findings

The final assembled Appeal Brief reflects a revision count of one, consistent with minimal iterative drafting activity. The three principal brief files show TotalTime of zero across 140 pages, blank identity fields, and creation-to-modification windows of three to six minutes for documents of 19 to 56 pages. Whether the draft reflects competent, diligent representation is a factual question that cannot be resolved without discovery.

### B. Authorship Anomaly

The Creator and LastModifiedBy fields are blank on all three final brief files, yet are populated on every other document in the production. Every earlier document bearing Marmur's authorship shows his name. The final brief files — the very documents Defendants rely upon to establish performance — show no author at all. These anomalies raise substantial factual questions regarding authorship, drafting history, and the timing and manner of assembly of the final brief materials. Discovery into native files, document management logs, and internal communications is the only way to determine who actually authored the brief — and that is precisely why a stay would be prejudicial.

### III. The Statute of Limitations Argument Will Be Fully Briefed in Opposition to Any Motion to Dismiss

#### *A. Tolling Bases*

Plaintiff has multiple independent bases for tolling — including equitable tolling, continuous representation principles, extraordinary circumstances, delayed discovery of material facts, and other grounds to be briefed fully at the appropriate time. The limitations argument presents inherently factual questions that cannot be resolved on the pleadings.

#### *B. Continuous Pursuit*

The record does not support Defendants' characterization of a three-year delay. Plaintiff and his father pursued refund and resolution continuously from termination through the weeks immediately preceding filing: Plaintiff made written demands in February 2022 and June 2023; his father made a separate demand on March 30, 2022; Defendant Lewis responded on April 5, 2022 — not by denying liability, but by redirecting to counsel; and replacement counsel and pro bono counsel represented to Plaintiff and his family that they also made refund attempts through the period immediately before filing. This is not a plaintiff sleeping on his rights.

### IV. Specific Relief Requested at the Conference

Plaintiff respectfully requests that the Court address three items at the conference regardless of motion practice timing: (1) insurance disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv), which are mandatory and not subject to a discretionary stay; (2) billing records and time entries; and (3) native files with complete metadata for the three principal appellate brief files identified in Exhibit D, which exhibit anomalous patterns creating independent preservation urgency.

Respectfully submitted,


s/ Ari Teman
Ari Teman
Plaintiff, Pro Se
Tel Aviv, Israel
May 13, 2026

cc: Judith Wallace, Esq., Carter Ledyard & Milburn LLP (via ECF)
    Matthew Flanagan, Esq., Marshall Dennehey P.C. (via ECF)