UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

ARI TEMAN,
    Plaintiff,
  v.
ALAN S. LEWIS, NATHANIEL Z. MARMUR, NATHANIEL Z. MARMUR, PLLC,
CARTER LEDYARD & MILBURN LLP, ALEXANDRA SHAPIRO, and SHAPIRO
ARATO BACH LLP,
    Defendants.
Case No. 25 Civ. 8220 (LJL)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO**

**DISMISS OF DEFENDANTS ALAN S. LEWIS AND CARTER LEDYARD &**

**MILBURN LLP**

**PRELIMINARY STATEMENT**

Although the CLM Defendants raise numerous arguments, virtually all of them depend on a single premise: that each of Plaintiff's claims is merely legal malpractice, that malpractice is time-barred, and that the rest of the case falls with it. The premise mischaracterizes the Amended Complaint, which pleads claims that do not depend on the quality of the appellate work at all—a $200,000 fee obtained by a misrepresentation made before the engagement began; affirmative post-termination misrepresentations made to defeat a fee-recovery demand; and a 2026 client-file production that occurred years after the representation ended and months after this suit was filed. Those claims rest on duties, misrepresentations, and harms distinct from negligent performance, and each carries a six-year limitations period or accrued in 2026.

The motion mischaracterizes the Complaint in a second, more basic way: it does not take the allegations as written. It asks the Court to weigh the parties' competing exhibits, to credit Defendants' characterization of disputed events, and to adopt Defendants' inferences over Plaintiff's reasonable ones. That is summary-judgment argument made on a Rule 12

motion. The very document Defendants offer as the centerpiece of their narrative—Plaintiff's February 19, 2022 email—confirms, in Plaintiff's contemporaneous words, that counsel had not finished reading the transcript and had produced an error-laden draft. A document incorporated by reference is read in full, not for the four words Defendants prefer.

The motion's threshold defenses do not support dismissal with prejudice. Any service defect is curable and at most yields dismissal without prejudice; and this Court has already held, in a materially identical action by this Plaintiff, that the fugitive-disentitlement doctrine does not apply absent a nexus between Plaintiff's status and the course of the proceedings—a nexus that is absent here. The motion should be denied.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion the Court accepts all well-pleaded allegations as true and draws every reasonable inference for Plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A court 'may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.' *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012); *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 169–72 (2d Cir. 2015). Where two plausible inferences exist, the inference favorable to the plaintiff controls at this stage.

## ARGUMENT

### I.  THE MOTION DEPENDS ON RESOLVING QUESTIONS RESERVED FOR DISCOVERY.

Stripped of characterization, the motion asks the Court to resolve—now, on the pleadings, without evidence—a series of questions that can only be answered with a record:

> who actually performed the substantive appellate work; when that work began; whether Lewis had completed his review of the trial transcript when the extension motions represented otherwise; how the fixed fee and the labor were

2

allocated between two firms and between attorneys and a non-attorney; what was represented to Plaintiff, and whether those representations were accurate; whether the client file produced in 2026 was complete; and whether the metadata anomalies in the final brief files have an innocent explanation.

Every one of these questions requires evidence. None can be resolved by accepting Defendants' characterization of their own documents over Plaintiff's well-pleaded allegations. That is precisely why discovery exists, and precisely why dismissal is improper.

This refrain recurs because it is the structural flaw in the motion: Defendants ask the Court to accept their version of disputed facts, when Rule 12 requires the Court to accept Plaintiff's well-pleaded allegations instead. The issues Defendants identify—who performed the work, what was represented, what was concealed, whether the client file is complete, and whether Plaintiff reasonably relied—are classic discovery questions.

## II.  THE FRAUD, CONTRACT, AND FIDUCIARY CLAIMS ARE NOT DUPLICATIVE OF MALPRACTICE.

### A.  The claims are distinct in timing, duty, and damages.

A fraud or contract claim against an attorney is non-duplicative of malpractice where it alleges a legal duty separate from the duty to perform, a misrepresentation collateral to the engagement, or special damages not recoverable in the malpractice measure. *Calcutti v. SBU, Inc.,* 224 F. Supp. 2d 691, 698 (S.D.N.Y. 2002). The claims here are distinct in timing, and the timing is visible on the docket. The inducement (Count I) occurred on August 30, 2021, before any representation existed, to procure the $200,000 payment; the injury is the fee paid in reliance, not the lost appeal. The post-termination fraud (Count III) occurred in March 2022, after the representation ended, in response to a fee-recovery demand. The client-file misconduct (Counts IV, X, XIII) occurred in May 2026, years after the representation and months after suit was filed. None of these duplicates a 2022 malpractice claim, and the 2026 claims do not share its accrual.

### B.  Count I is the core of the case, and *Carmel* does not reach it.

The centerpiece is fraudulent inducement. Plaintiff alleges that Defendants represented, before the engagement began, that Lewis and Marmur would be personally and primarily responsible—a representation Plaintiff alleges was false when made, supported not by non-performance alone but by a documented pattern. Plaintiff alleges that, despite five months of representation and a $200,000 fixed fee, Defendants had not completed review of the transcript, had not prepared a competent merits brief, and had not made the promised request to the District Court for modification of Plaintiff's terms of release relating to the ankle monitor—leaving Plaintiff to make it pro se eighteen days into the engagement; that they never appeared in the district court; and that an extension motion represented that more time was needed to prepare the brief while the same submissions disclosed that a responsible attorney had been traveling rather than advancing the work. *See Brown v. Lockwood*, 76 A.D.2d 721, 733 (2d Dep't 1980). The injury is the fee paid in reliance, and it exists whether or not the appeal could have succeeded.

For these reasons *Carmel v. Lunney*, 70 N.Y.2d 169 (1987), does not bar this claim. *Carmel* bars recovery for the *adequacy* of a criminal defense because such a claim collaterally attacks the conviction; it presupposes a representation whose competence is challenged. That predicate is absent where, as Plaintiff alleges, no substantive representation was performed. The claim is not that Defendants litigated the appeal poorly, but that they collected a $200,000 fee for a representation they did not perform and then misrepresented what they had done. Reading *Carmel* to bar that claim, or the contract, post-termination, and 2026 claims, would extend it beyond its rationale by applying it to independent fraud and contract claims that do not require the Court to invalidate the conviction or to find Plaintiff innocent—and would mean that attorneys who, as alleged, collected $200,000 and failed to perform could escape all accountability simply because the client did not ultimately prevail. *Carmel* was designed to prevent collateral attacks on a conviction, which these claims do not make; it was not designed to immunize that conduct.

The 2026 client-file claims are outside *Carmel* for a further, independent reason. A lawyer's obligation to deliver the client's file does not depend on the outcome of any case, on fees owed, or on anything bearing on the conviction. *See* N.Y. R. Prof'l Conduct 1.16(e); *Sage Realty Corp. v. Proskauer Rose*, 251 A.D.2d 35 (1st Dep't 1998). A claim arising from the 2026 production rests on a duty independent of the representation's quality and of the conviction itself, and *Carmel* cannot reach it.

### C. Defendants' reliance on *Zeldes Needle Cooper* confirms the distinction.

Defendants quote this Court's decision in *Teman v. Zeldes Needle Cooper LLP*, which dismissed fraud claims that duplicated malpractice on the same operative facts and the same damages. The Amended Complaint here was drafted to satisfy the very test *Zeldes* applied: it identifies a separate duty (pre-engagement inducement and post-termination fiduciary candor), collateral misrepresentations (the inducement and the March 3 letter), and distinct damages (the fee paid in reliance; the reliance losses from the post-termination misrepresentations; the deprivation of file materials in 2026). The presence of an alternative malpractice count does not convert these into malpractice; it is what alternative pleading looks like.

### III.  DEFENDANTS' OWN EXHIBIT C DEFEATS THEIR CAUSATION AND BREACH ARGUMENTS.

Defendants' causation and breach arguments depend on the characterization that Plaintiff abruptly fired competent counsel and instructed them not to file, severing causation under *Schutz v. Kagan Lubic* and *Kozmol*. But the document Defendants incorporate by reference to prove the firing—Plaintiff's February 19, 2022 email—says far more than its caption. In Plaintiff's contemporaneous words, it states that counsel had not completed reading the transcript, that the draft was replete with factual and timeline errors, and that the discharge was for cause. A document incorporated by reference is read in its entirety. *Cf. Blue Tree Hotels Inv. v. Starwood Hotels*, 369 F.3d 212, 222 (2d Cir. 2004).

That fact disposes of two arguments. A discharge for cause—documented by a client who states that counsel had not read the record and had produced an error-ridden draft—is not the clean, voluntary substitution that severs causation; it is itself an alleged consequence of the non-performance, a damages event rather than a superseding cause. And the same email corroborates the factual predicate of the fraud claims—that counsel had not read the transcript—the very fact the March 3 letter later denied. This is the recurring defect in the motion: it assumes the factual proposition favorable to Defendants and rejects the equally plausible inference favorable to Plaintiff. Rule 12 requires the opposite. Where competing reasonable inferences exist, the Court must accept Plaintiff's plausible inference and permit the case to proceed to discovery.

Defendants' own authorities confirm the distinction. In *Kozmol v. Law Firm of Allen L. Rothenberg*, 241 A.D.2d 484 (2d Dep't 1997), the malpractice claim failed because the harm was *curable*: a 120-day statutory window allowed successor counsel to recommence the identical action and obtain the identical relief, so prior counsel's negligence caused no lasting injury. Here, the central harm is not curable. The months Plaintiff spent under restrictive conditions of release during the period Defendants failed to advance the appeal cannot be returned by successor counsel or by any later motion; once elapsed, that time is irretrievable. *Kozmol* was also decided on summary judgment, on a developed record—not on the pleadings. Whether a comparable cure opportunity existed here, and whether the harm was already complete when successor counsel appeared, are factual questions that cannot be resolved on a Rule 12(b)(6) motion. *Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP*, 2013 WL 3357921 (S.D.N.Y. July 2, 2013), is likewise inapposite: there, the engagement letter expressly disclosed the precise conflict, and the client signed it. Here the Engagement Letter promised the opposite—primary responsibility and completion through a Second Circuit decision—and Plaintiff consented to no withdrawal or substitution. In all events, the intervening-counsel cases reach, at most, a malpractice theory premised on the appeal's outcome; they do not touch

6

the inducement, contract, or 2026 claims.

## IV.  THE BREACH-OF-CONTRACT CLAIM RESTS ON SPECIFIC PROMISES.

Under New York law, a breach-of-contract claim against an attorney based on a retainer agreement 'may be sustained only where the attorney makes an express promise in the agreement to obtain a specific result and fails to do so.' *Calcutti v. SBU, Inc.,* 224 F. Supp. 2d 691, 701 (S.D.N.Y. 2002) (quoting *Pacesetter Communications Corp. v. Solin & Breindel, P.C.,* 150 A.D.2d 232, 236 (1st Dep't 1989)). The claim here meets that standard because the Engagement Letter contains express, specific promises—deliverables, not a general undertaking of competence—in its own words. It promised that the engagement 'will conclude upon receipt of a decision from the judicial panel that decides the Second Circuit appeal'; and that Defendants would, 'without additional charge, … make a request to the District Court for a modification of [his] terms of release on bail pending appeal, relating to [his] wearing of an ankle monitor.' Plaintiff alleges that each specific promise was breached. These are defined promises in the retainer, not a guarantee of success and not a restyling of the competence duty.

Defendants' reliance on the Letter's authorization of associates and support staff does not defeat the claim. Plaintiff does not contend that the Letter forbade other attorneys or staff; it expressly permitted them. Plaintiff contends that Defendants promised that they—Lewis and Marmur—would be 'the attorneys primarily responsible,' and whether they in fact remained primarily responsible, or instead delegated the substance of the work, is a factual question that cannot be resolved on a Rule 12 motion. Defendants' further argument that Plaintiff 'fired' them and so cannot complain of non-completion depends on reading Exhibit C for its caption rather than its content; whether the discharge excused performance or was itself caused by the breach is a fact question. As to the promised request for modification of Plaintiff's terms of release, the docket entry directing prior trial counsel to assist does not negate Defendants' own unfulfilled undertaking; that promise is pleaded principally as evidence of the inducement

pattern under Count I. Whether those undertakings were in fact performed presents a factual dispute that cannot be resolved by crediting Defendants' competing account on a Rule 12(b)(6) motion.

Plaintiff's injury is not limited to the $200,000 fee. Plaintiff alleges that Defendants' failure to perform the contracted work, and their concealment of that failure, caused consequential harm, including the prolongation of restrictive conditions of release during a period in which competent counsel could have advanced the appeal. The nature and extent of those consequential damages is a factual question that cannot be resolved on the pleadings.

## V.  THE POST-TERMINATION FRAUD CLAIM (COUNT III) PLEADS RELIANCE AND DISTINCT INJURY.

Count III arises entirely from post-engagement conduct: the March 3, 2022 letter's representations that the full services had been performed, that attorney time exceeding $200,000 had been devoted to the matter, and that a 60-page brief had been prepared by Lewis and Marmur personally. Plaintiff alleges these were false or misleading when made, as shown by the 2026 production—including the blank-author metadata on the three final brief files and the revision activity concentrated in a non-attorney's working documents. Plaintiff could not evaluate these representations in 2022 because the documentary record was within Defendants' exclusive possession until 2026; in reliance, he delayed forensic investigation and treated the dispute as a fee negotiation. Those are reliance-based injuries from the post-termination fraud itself.

The disputed character of these representations is underscored by a contradiction among the moving Defendants. To defeat the fraud claim, the CLM Defendants argue that Lewis's representation about the value of attorney time is *immaterial* because Plaintiff agreed to a flat fee. The SAB Defendants, by contrast, rely on that same representation as *true*—asserting that the value of the time devoted exceeded the fixed fee—to prove Plaintiff received his bargain. Plaintiff's claims allege it is *false*. A fact that the moving parties

8

themselves describe as immaterial, true, and false in the same set of briefs is, at a minimum, a disputed material fact that cannot be resolved on the pleadings.

## VI.  THE 2026 CLIENT-FILE CLAIMS ARE INDEPENDENTLY ACTIONABLE.

The CLM Defendants devote the bulk of their motion to the 2021–22 representation and little to the May 2026 production. Those 2026 claims accrued after this action was filed and after Defendants' duty to preserve arose; they are not barred by any limitations period applicable to the earlier claims, and they are not a mere discovery dispute. A client's right to the contents of his own file exists independent of litigation discovery. *Sage Realty Corp. v. Proskauer Rose,* 251 A.D.2d 35 (1st Dep't 1998). The fiduciary-breach claim rests on that duty, not on a private right of action under a professional-conduct rule.

Defendants' principal answer is that the allegations are hedged—that the production 'appears' incomplete and metadata 'may reflect' alteration. That hedging is deliberate and correct. Plaintiff does not allege established fabrication; he alleges documented anomalies warranting forensic discovery—chiefly that the three final brief files alone, in an entire production, bear blank author fields inconsistent with the firm's automatic document-population practice. Whether an innocent explanation for that anomaly exists is a factual question that cannot be resolved on the pleadings; the audit logs will supply one or they will not. A request for narrowly tailored forensic discovery into a documented inconsistency is not a conclusory fraud allegation.

## VII.  THE EQUITABLE CLAIMS ARE PLEADED IN THE ALTERNATIVE.

Unjust enrichment (Count VI) is pleaded in the alternative and to the extent the Engagement Letter does not govern every aspect of the parties' dealings, including fees generated through a concealed referral structure; Rule 8 permits that. The equitable accounting (Count XII) rests on the fiduciary relationship, the complexity of a joint engagement funded by a single fixed fee, and the fact that the allocation of work between two firms and between

attorneys and a non-attorney is within Defendants' exclusive knowledge. Whether an adequate legal remedy displaces the accounting cannot be decided before the records are known.

## VIII.  ANY SERVICE DEFECT IS CURABLE AND DOES NOT WARRANT DISMISSAL WITH PREJUDICE.

Rule 4(m) dismissal is without prejudice, and the Rule directs the Court to extend the time for service for good cause and permits a discretionary extension even absent good cause. Plaintiff, proceeding pro se, attempted service at Defendants' own building; Defendants have actual notice, as their thirty-page motion demonstrates; and they identify no prejudice. Those circumstances counsel an extension, not dismissal with prejudice. To the extent the Court has any concern, Plaintiff will promptly complete service in proper form.

## IX.  THE FUGITIVE-DISENTITLEMENT DOCTRINE DOES NOT WARRANT DISMISSAL.

Fugitive disentitlement is a discretionary, disfavored doctrine. A court may, in its discretion, bar a fugitive from judicial relief, but only where there is a nexus between the litigant's status and the course of the proceedings; absent that nexus the doctrine does not apply. *Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 280 (2d Cir. 1997); *see Degen v. United States*, 517 U.S. 820 (1996); *United States v. Awadalla*, 357 F.3d 243, 246–47 (2d Cir. 2004) (in civil cases, the two recognized justifications are the inability to enforce a judgment against the fugitive and prejudice to the adversary). This Court has already applied that standard to this Plaintiff. In a materially identical civil action—in which, as here, Plaintiff was the party seeking relief—the Court declined to stay the case, holding that it 'lacks the expressly required nexus between fugitivity and the course of the proceedings.' *Teman v. Zeldes Needle Cooper LLP*, No. 24-cv-09830 (LJL), Dkt. 32 at 6 (S.D.N.Y. Dec. 31, 2025).

The same conclusion follows here, with added force. The two recognized civil rationales for disentitlement—the inability to enforce the court's judgment and prejudice to the

adversary—are both absent. There are no claims against Plaintiff; any judgment in this action runs against Defendants, all of whom are in this District, so the Court will have no difficulty enforcing it. Nor can Defendants show prejudice from Plaintiff's location: every document material to this fee-fraud and contract dispute is in Defendants' own possession. Defendants' observation that Plaintiff's mailing address is a commercial mail location supplies no nexus: a mailing address on a public filing is not a representation of residence, Plaintiff's Florida domicile is well-pleaded and taken as true at this stage, and the address bears no relation to the Court's ability to adjudicate this civil action.

### X.  THE ALTERNATIVE MALPRACTICE COUNT DOES NOT REACH THE OTHER CLAIMS.

Count XIV is pleaded expressly in the alternative. Plaintiff does not contend that a stand-alone malpractice claim accruing in 2022 escapes the three-year limitations period; that is why the operative claims are pleaded as fraud, contract, and 2026 misconduct. The limitations posture of the alternative count therefore does not reach the independent claims. To the extent any timeliness question survives, the primary tolling theories rest on Defendants' own conduct—fraudulent concealment and the delayed production of a complete file within Defendants' exclusive possession until 2026.

### CONCLUSION

Finally, even if the Court were to conclude that some theories are duplicative, time-barred, or otherwise deficient, dismissal of the action would remain improper. The Amended Complaint plausibly alleges several independently actionable claims—including pre-engagement fraudulent inducement, breach of specific contractual undertakings, and the independently accruing 2026 client-file claims—each of which rests on a duty, a misrepresentation, or a harm distinct from negligent performance and none of which requires the Court to disturb the conviction. Partial dismissal is available to the Court; dismissal of the

11

entire action is not warranted where, at a minimum, those claims state a basis for relief and warrant discovery.

At this stage, Plaintiff need not prove that every claim will ultimately succeed. The question is whether the Complaint plausibly alleges one or more claims upon which relief may be granted. Even if the Court concludes that certain theories are duplicative or otherwise deficient, Rule 12(b)(6) does not authorize dismissal of an entire action where independent claims remain plausibly pleaded.

For the foregoing reasons, the CLM Defendants' motion to dismiss should be denied. In the alternative, to the extent the Court finds any claim deficient, Plaintiff respectfully requests leave to replead under Rule 15(a)(2), and any dismissal should be without prejudice.

Dated: June 30, 2026
     Miami Beach, Florida

Respectfully submitted,

/s/ Ari Teman
Ari Teman
Plaintiff, Pro Se

12