UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

ARI TEMAN,
     Plaintiff,
  v.
ALAN S. LEWIS, NATHANIEL Z. MARMUR, NATHANIEL Z. MARMUR, PLLC,
CARTER LEDYARD & MILBURN LLP, ALEXANDRA SHAPIRO, and SHAPIRO
ARATO BACH LLP,
     Defendants.
Case No. 25 Civ. 8220 (LJL)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO
DISMISS OF DEFENDANTS NATHANIEL Z. MARMUR AND NATHANIEL Z.
MARMUR, PLLC**

**PRELIMINARY STATEMENT**

Although the Marmur Defendants raise numerous arguments, virtually all of them
depend on a single premise: that each of Plaintiff's claims is merely a legal-malpractice claim,
and that the malpractice claim is time-barred and barred because Plaintiff's conviction has not
been vacated. The premise mischaracterizes the Amended Complaint. The Complaint pleads
distinct categories of wrongdoing: a pre-engagement misrepresentation that induced a
$200,000 payment; affirmative concealment of the true state of the work during the
engagement; breach of specific contractual promises; and, independently, misconduct in the
May 2026 client-file production that accrued years after the representation ended. Each rests
on a duty, a misrepresentation, or a harm distinct from the negligent performance of legal
services.

The motion's method is to assume Defendants' version of contested events and to draw
every inference in Defendants' favor. Rule 12 requires the opposite. The questions the motion
raises—who performed the work, when substantive drafting began, what was represented to

1

Plaintiff, whether the client file was complete, and whether the metadata anomalies have an innocent explanation—are classic questions for discovery, not for resolution on the pleadings.

The motion's threshold arguments fare no better. The *Carmel v. Lunney* 'actual innocence' rule bars recovery for the *adequacy* of a criminal defense; it does not bar a claim that an attorney's independent fraud injured the client, and reading it so broadly would extend it beyond its rationale by insulating independent fraud and contract claims merely because they arise in the context of a criminal representation. And the fugitive-disentitlement doctrine does not apply where, as here and as this Court has already held in a materially identical action by this Plaintiff, there is no nexus between Plaintiff's status and the Court's ability to adjudicate the case. The motion should be denied.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion the Court accepts all well-pleaded allegations as true and draws every reasonable inference in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A court 'may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.' *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012); *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 169–72 (2d Cir. 2015) (vacating dismissal where the district court drew inferences against the plaintiff at the pleading stage). Materiality, reliance, scienter, and causation are ordinarily fact questions not resolvable on the pleadings, and a pro se litigant's submissions are read to raise the strongest arguments they suggest.

## ARGUMENT

### I.  THE MOTION DEPENDS ON RESOLVING QUESTIONS RESERVED FOR DISCOVERY.

Stripped of characterization, the motion asks the Court to resolve—now, on the pleadings, without evidence—a series of questions that can only be answered with a record:

> who actually performed the substantive appellate work; when that work began; whether Lewis had completed his review of the trial transcript when the extension motions represented otherwise; how the fixed fee and the labor were allocated between two firms and between attorneys and a non-attorney; what was represented to Plaintiff, and whether those representations were accurate; whether the client file produced in 2026 was complete; and whether the metadata anomalies in the final brief files have an innocent explanation.

Every one of these questions requires evidence. None can be resolved by accepting Defendants' characterization of their own documents over Plaintiff's well-pleaded allegations. That is precisely why discovery exists, and precisely why dismissal is improper.

Discovery will determine who drafted the briefs, when substantive work began, how the fixed fee and attorney time were allocated, what communications occurred among Defendants, whether the client file was complete, and whether the metadata anomalies have any innocent explanation. Those are the reasons discovery exists. The Court should not foreclose them on the pleadings.

## II.  THE *CARMEL* 'ACTUAL INNOCENCE' RULE DOES NOT BAR PLAINTIFF'S CLAIMS.

*Carmel v. Lunney*, 70 N.Y.2d 169 (1987), bars a convicted defendant from recovering against former counsel where the gravamen of the complaint is that the attorney *inadequately* represented the defendant in the underlying criminal matter, because such a claim collaterally attacks the conviction. The rule presupposes a representation whose competence is being challenged. For three independent reasons, it does not bar the claims pleaded here.

### A.  *Carmel* does not apply because Defendants performed no substantive representation to challenge.

This is not a case about the quality of a criminal representation, because Plaintiff alleges that no substantive representation was performed. Despite five months of engagement

and a $200,000 fixed fee, Plaintiff alleges that Defendants had not completed review of the trial transcript, had not prepared a competent merits brief, and had not made the promised request to the District Court for modification of Plaintiff's terms of release relating to the ankle monitor, which the Engagement Letter obligated them to make without additional charge—a request Plaintiff was left to make himself, pro se. The contrast between what Defendants told the court and what they were doing is documented: an extension motion represented that additional time was needed to prepare the brief, while the same extension submissions disclosed that a responsible attorney had been traveling rather than advancing the work, supporting the inference that substantive work was not being performed. The claim here is therefore not that Defendants litigated the appeal poorly; it is that they collected a $200,000 fee for a representation they did not substantively perform and then misrepresented what they had done. That is a claim for fraud and breach of contract, not a challenge to the adequacy of a defense, and *Carmel* does not reach it.

### B.  In any event, the claims do not require proving innocence.

Even if *Carmel* were thought to apply, the claims do not require the Court to find Plaintiff innocent. Count I alleges that Defendants obtained a $200,000 fee by representing, before any representation began, that Lewis and Marmur would be personally and primarily responsible—a representation Plaintiff alleges was false when made. The injury is the fee paid in reliance, and it exists whether or not the appeal could have succeeded. Counts III, IV, X, and XIII concern post-termination statements and a 2026 client-file production—conduct that is not a criminal representation at all. Count V seeks the return of a fee for specific contractual promises that were not performed. None of these claims asks the Court to declare Plaintiff innocent, to vacate his conviction, or to find that competent advocacy would have changed the outcome of the appeal, which successor counsel handled to its conclusion. Reading *Carmel* to bar them would extend it beyond its rationale by applying it to independent fraud and contract claims that do not require the Court to invalidate the conviction—and would mean that

attorneys who, as alleged, collected $200,000 and failed to perform could escape all accountability simply because the client did not ultimately prevail. *Carmel* was designed to prevent collateral attacks on a conviction, which these claims do not make; it was not designed to immunize that conduct.

**C.  The client-file claims are independently outside *Carmel* because the duty to return the file is unconditional.**

The 2026 client-file claims (Counts IV, X, and XIII) are outside *Carmel* for a further, independent reason. A lawyer's obligation to deliver the client's file does not depend on the outcome of any case, on fees owed, or on anything bearing on the conviction. *See* N.Y. R. Prof'l Conduct 1.16(e); *Sage Realty Corp. v. Proskauer Rose*, 251 A.D.2d 35 (1st Dep't 1998). A claim arising from the 2026 production therefore cannot be an attack on the adequacy of a criminal representation; it rests on a duty independent of the representation's quality and of the conviction itself. *Carmel* is doctrinally incapable of reaching it.

### III.  COUNT I (FRAUDULENT INDUCEMENT) IS NOT DUPLICATIVE AND PLEADS FRAUD, NOT MERE NON-PERFORMANCE.

**A.  A pre-engagement misrepresentation is collateral to performance and seeks distinct damages.**

A fraud claim is non-duplicative of malpractice where it alleges a misrepresentation collateral to the engagement, a duty independent of the duty to perform, or damages not recoverable in the malpractice measure. *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 698 (S.D.N.Y. 2002). Count I satisfies each. The representation that Lewis and Marmur would be personally and primarily responsible was made before the engagement existed, to induce payment; nothing about how the appeal was later litigated is necessary to the claim. The damages sought—return of the $200,000 paid in reliance—are the inducement measure, not the negligent-performance measure. A misrepresentation that induces a contract is the

5

paradigm of a collateral fraud. *Id.*

Defendants' reliance on the Engagement Letter's authorization of associates and support staff does not answer this claim. Plaintiff does not contend that the Letter forbade the involvement of other attorneys or staff; the Letter expressly permitted it. Plaintiff contends that Defendants represented that they—Lewis and Marmur—'will be the attorneys primarily responsible for the representation,' and that whether they in fact remained primarily responsible, or instead delegated the substance of the work, is a factual question that cannot be resolved on a Rule 12 motion. The Letter's permission to use staff and the promise of primary responsibility are not in conflict; the dispute is whether the promise of primary responsibility was kept.

### B.  Plaintiff pleads the additional facts that distinguish fraud from a broken promise.

Defendants invoke the rule that fraudulent intent cannot be inferred from non-performance alone and that a promise of future conduct requires additional proof of a present intent not to perform. *Brown v. Lockwood*, 76 A.D.2d 721, 733 (2d Dep't 1980). Plaintiff pleads exactly that additional proof. He alleges that, despite five months of representation and a $200,000 fixed fee, Defendants had not completed review of the trial transcript, had not prepared a competent merits brief, and had not made the promised request for modification of Plaintiff's terms of release on bail relating to the ankle monitor—leaving Plaintiff to make it himself, pro se, eighteen days into the engagement; that they never appeared in the district court; and that an extension motion represented additional time was needed to prepare the brief while the same submissions disclosed that a responsible attorney had been traveling rather than advancing the work. Those facts—contemporaneous with inducement and continuing from the first days of the engagement—support the inference that the promise of personal, primary responsibility was false when made. Whether that inference ultimately prevails is for summary judgment; at the pleading stage it is enough that it is

plausible. This is the recurring defect in the motion: it assumes the factual proposition favorable to Defendants and rejects the equally plausible inference favorable to Plaintiff. Rule 12 requires the opposite. Where competing reasonable inferences exist, the Court must accept Plaintiff's plausible inference and permit the case to proceed to discovery.

## IV.  COUNT V (BREACH OF CONTRACT) RESTS ON SPECIFIC PROMISES, NOT A GUARANTEED RESULT.

Under New York law, a breach-of-contract claim against an attorney based on a retainer agreement 'may be sustained only where the attorney makes an express promise in the agreement to obtain a specific result and fails to do so.' *Calcutti v. SBU, Inc.,* 224 F. Supp. 2d 691, 701 (S.D.N.Y. 2002) (quoting *Pacesetter Communications Corp. v. Solin & Breindel, P.C.,* 150 A.D.2d 232, 236 (1st Dep't 1989)). The claim here meets that standard because the Engagement Letter contains express, specific promises—deliverables, not a general undertaking of competence—stated in its own words. It promised that the engagement 'will conclude upon receipt of a decision from the judicial panel that decides the Second Circuit appeal,' and that Defendants would, 'without additional charge, … make a request to the District Court for a modification of [his] terms of release on bail pending appeal, relating to [his] wearing of an ankle monitor.' Plaintiff alleges that each of those specific promises was breached: Defendants did not see the engagement through a Second Circuit decision, and never made the promised request for modification of Plaintiff's terms of release—leaving Plaintiff to make it himself, pro se. These are defined contractual promises in the retainer, not a guarantee of success and not a restyling of negligence. The Letter's further promise that Lewis and Marmur would be 'the attorneys primarily responsible for the representation' is pleaded as part of the inducement under Count I; the contract claim does not depend on it. Whether the specific promises were performed presents a factual dispute that cannot be resolved by crediting Defendants' competing account on a Rule 12(b)(6) motion.

Plaintiff's injury is not limited to the $200,000 fee. Plaintiff alleges that Defendants' failure to perform the contracted work, and their concealment of that failure, caused consequential harm, including the prolongation of restrictive conditions of release during a period in which competent counsel could have advanced the appeal. The nature and extent of those consequential damages is a factual question that cannot be resolved on the pleadings.

## V.  THE 2026 CLIENT-FILE CLAIMS ARE INDEPENDENTLY ACTIONABLE AND NOT A 'DISCOVERY DISPUTE.'

### A.  The claims rest on fiduciary and common-law duties, not solely on a professional-conduct rule.

Defendants argue that the file claims merely allege a violation of Rule 1.16(e), which creates no private cause of action. But the rule supplies the standard of an independently actionable fiduciary duty; breach of fiduciary duty is a recognized tort, and a client's right to the contents of his file is a recognized common-law and property right. *See Sage Realty Corp. v. Proskauer Rose,* 251 A.D.2d 35 (1st Dep't 1998). Plaintiff does not sue on the rule; he sues for breach of the duty the rule describes and for the wrongful handling of his own property.

### B.  The 2026 conduct accrued after this action was filed and is not barred by the discovery stay.

The image-only production and the omission of material file contents occurred in May 2026, years after the representation ended and months after this action was filed. A client's right to his own file exists independent of litigation discovery and is not suspended by a stay of discovery in the case. Defendants' own papers confirm the point: they represent that native files exist and invite Plaintiff to contact counsel to discuss the cost of obtaining them. That concession defeats the premise that image-only was the only feasible format and is incompatible with the contention that the matter is stay-barred.

Defendants' remaining answer is that the allegations are hedged—that the production 'appears' incomplete and that metadata 'may reflect' alteration. That hedging is deliberate and correct. Plaintiff does not allege established fabrication; he alleges documented anomalies warranting forensic discovery—chiefly that the three final brief files alone, in an entire production, bear blank author fields inconsistent with the firm's automatic document-population practice. Whether an innocent explanation for that anomaly exists is a factual question that cannot be resolved on the pleadings; the audit logs will answer it. A request for narrowly tailored forensic discovery into a documented inconsistency is not a conclusory fraud allegation. This is the recurring defect in the motion: it assumes the factual proposition favorable to Defendants and rejects the equally plausible inference favorable to Plaintiff. Rule 12 requires the opposite. Where competing reasonable inferences exist, the Court must accept Plaintiff's plausible inference and permit the case to proceed to discovery.

## VI.  THE REMAINING CLAIMS ARE ADEQUATELY PLEADED.

### A.  Fraud during the representation (Count II).

Count II alleges that Defendants concealed the true state of readiness while representing that work was progressing—most concretely, the extension motion representing a need to 'become familiar with the record' days after Lewis privately admitted he had not finished the transcript. Concealment by one with superior knowledge is distinct from negligent performance, and the injury—the lost window to retain substitute counsel with adequate preparation time—is distinct as well. Defendants' proximate-cause answer defeats only a malpractice theory premised on the appeal's outcome; indeed, their own recitation shows the brief was not filed until May 25, 2022, three months after their February 22 withdrawal, corroborating that the work was far from complete when Defendants represented otherwise.

### B.  Unjust enrichment (Count VI) and equitable accounting (Count XII).

9

Both are pleaded in the alternative. Unjust enrichment is alleged to the extent the Engagement Letter does not govern every aspect of the parties' dealings, including fees generated through a referral structure whose financial relationships were concealed; Rule 8 permits that. The accounting rests on the fiduciary relationship and the fact that the allocation of a single fixed fee between two firms and between attorneys and a non-attorney is within Defendants' exclusive knowledge. Whether an adequate legal remedy ultimately displaces the accounting cannot be decided before the records are known.

### C.  Judiciary Law § 487 (Count VIII).

Section 487 reaches an attorney guilty of deceit with intent to deceive the court 'or any party.' The 'any party' prong does not depend on the forum, and Plaintiff's theory rests on deceit directed at him as a party—the March 3, 2022 letter's representations about work performed, made to defeat a fee-recovery demand. To the extent Defendants read the statute to be confined to state-court proceedings, that reading is contested and cannot support dismissal as a matter of law. Plaintiff acknowledges the statute's high bar; the post-termination and turnover-based theories, not the extension-motion theory (pleaded as cumulative), carry the claim.

### D.  Conversion (Count XIII).

The wrongful-retention and image-only-production conduct on which Count XIII rests occurred in May 2026 and accrues from that date. To the extent any portion is measured from a 2022 demand, that portion may be severed without dismissing the independently accruing 2026 conduct, which is timely.

## VII.  THE FUGITIVE-DISENTITLEMENT DOCTRINE DOES NOT WARRANT DISMISSAL.

Fugitive disentitlement is a discretionary, disfavored doctrine. A court may, in its discretion, bar a fugitive from judicial relief, but only where there is a nexus between the

litigant's status and the course of the proceedings; absent that nexus the doctrine does not apply. *Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 280 (2d Cir. 1997); *see Degen v. United States*, 517 U.S. 820 (1996); *United States v. Awadalla*, 357 F.3d 243, 246–47 (2d Cir. 2004) (in civil cases, the two recognized justifications are the inability to enforce a judgment against the fugitive and prejudice to the adversary). This Court has already applied that standard to this Plaintiff. In a materially identical civil action—in which, as here, Plaintiff was the party seeking relief—the Court declined to stay the case under the doctrine, holding that the action 'lacks the expressly required nexus between fugitivity and the course of the proceedings.' *Teman v. Zeldes Needle Cooper LLP*, No. 24-cv-09830 (LJL), Dkt. 32 at 6 (S.D.N.Y. Dec. 31, 2025).

The same conclusion follows here, with added force. The two recognized civil rationales for disentitlement—the inability to enforce the court's judgment and prejudice to the adversary—are both absent. There are no claims against Plaintiff; any judgment in this action runs against Defendants, all of whom are in this District, so the Court will have no difficulty enforcing it. Nor can Defendants show prejudice from Plaintiff's location: every document material to this fee-fraud and contract dispute is in Defendants' own possession. Defendants' submissions reduce to a concern that monetary sanctions might be difficult to collect and that *Degen* predates modern technology—policy observations, not the nexus the doctrine requires. There is no basis to bar an independent civil claim that the Court can fully and fairly adjudicate on documents within Defendants' control.

## VIII.  THE ALTERNATIVE MALPRACTICE COUNT DOES NOT REACH THE OTHER CLAIMS.

Count XIV is pleaded expressly in the alternative. Plaintiff does not resist the conclusion that a stand-alone malpractice claim accruing in 2022 would face a three-year limitations period; that is precisely why the operative claims are pleaded as fraud, contract, and 2026 misconduct, each carrying a six-year period or accruing in 2026. The disposition of the

alternative count does not reach those independent claims. To the extent any timeliness question survives, Plaintiff's primary tolling theories rest on Defendants' own conduct—fraudulent concealment and the delayed production of a complete file within Defendants' exclusive possession until 2026.

## CONCLUSION

Finally, even if the Court were to conclude that some theories are duplicative, time-barred, or otherwise deficient, dismissal of the action would remain improper. The Amended Complaint plausibly alleges several independently actionable claims—including pre-engagement fraudulent inducement, breach of specific contractual undertakings, and the independently accruing 2026 client-file claims—each of which rests on a duty, a misrepresentation, or a harm distinct from negligent performance and none of which requires the Court to disturb the conviction. Partial dismissal is available to the Court; dismissal of the entire action is not warranted where, at a minimum, those claims state a basis for relief and warrant discovery.

At this stage, Plaintiff need not prove that every claim will ultimately succeed. The question is whether the Complaint plausibly alleges one or more claims upon which relief may be granted. Even if the Court concludes that certain theories are duplicative or otherwise deficient, Rule 12(b)(6) does not authorize dismissal of an entire action where independent claims remain plausibly pleaded.

For the foregoing reasons, the Marmur Defendants' motion to dismiss should be denied. In the alternative, to the extent the Court finds any claim deficient, Plaintiff respectfully requests leave to replead under Rule 15(a)(2), and any dismissal should be without prejudice.

Dated: June 30, 2026
    Miami Beach, Florida

Respectfully submitted,

/s/ Ari Teman
Ari Teman
Plaintiff, Pro Se