UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ARI TEMAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 25 Civ. 8220 (LJL) |
| v. | : | |
| | : | |
| ALAN S. LEWIS, NATHANIEL Z. | : | |
| MARMUR, NATHANIEL Z. MARMUR, | : | |
| PLLC, CARTER LEDYARD & MILBURN | : | |
| LLP, ALEXANDRA SHAPIRO, and | : | |
| SHAPIRO ARATO BACH LLP, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE
JOINT MOTION TO DISMISS OF DEFENDANTS
SHAPIRO ARATO BACH LLP AND ALEXANDRA SHAPIRO**

i

# TABLE OF AUTHORITIES

**Cases**

*ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 1043 (2015)..............................11, 13

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012)...................................2, 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................................................2

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*, 115 A.D.3d 128 (1st Dep't 2014) ...................................................................................................................................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...........................................................................2

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993)..........................................5, 8, 14, 16

*Brunetti v. Musallam*, 11 A.D.3d 280 (1st Dep't 2004)....................................................................9

*DIRECTV, LLC v. Nexstar Broad., Inc.*, 2021 NY Slip Op 06539 (1st Dep't 2021)......................6

*Dubbs v. Stribling & Assocs.*, 96 N.Y.2d 337 (2001)..................................................................8, 10

*Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486 (2d Cir. 2018)..........................................2

*Jana L. v. W. 129th St. Realty Corp.*, 22 A.D.3d 274 (1st Dep't 2005)....................................5, 11

*Juman v. Louise Wise Servs.*, 254 A.D.2d 72 (1st Dep't 1998)........................................................6

*Junius Constr. Corp. v. Cohen*, 257 N.Y. 393 (1931).......................................................................5

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413 (1996)....................................................14

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006).................................................................13

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015)...........2, 8

*People ex rel. Cuomo v. Wells Fargo Ins. Servs., Inc.*, 16 N.Y.3d 166 (2011)............................10

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478 (2d Cir. 1995)..........5

*Roni LLC v. Arfa*, 74 A.D.3d 442 (1st Dep't 2010), aff'd, 18 N.Y.3d 846 (2011).............2, 8, 9, 14

*Seeley v. Seeley*, 129 A.D.2d 625 (2d Dep't 1987)........................................................................3, 4

*State v. Rachmani Corp.*, 71 N.Y.2d 718 (1988).........................................................................9, 10

*Swersky v. Dreyer & Traub*, 219 A.D.2d 321 (1st Dep't 1996)....................................2, 4, 8, 9, 14

*Vandashield Ltd. v. Isaacson*, 146 A.D.3d 552 (1st Dep't 2017)....................................................14

*Wendt v. Fischer*, 243 N.Y. 439 (1926)..............................................................................................8

*Wildermann v. Wachtell*, 149 Misc. 623 (Sup. Ct. N.Y. Co. 1933), aff'd, 241 A.D. 812 (1st Dep't 1934)............................................................................................................................................7

*Womack v. Capital Stack, LLC*, 2019 WL 4142740 (S.D.N.Y. Aug. 30, 2019)......................11, 12

**Rules and Other Authorities**

Fed. R. Civ. P. 12(b)(6)............................................................................................................. passim

Fed. R. Civ. P. 15(a)(2)....................................................................................................................18

N.Y. R. Prof'l Conduct 1.18..............................................................................................................4

N.Y.C. Bar Formal Op. 2016-1.......................................................................................................15

Restatement (Second) of Torts § 529................................................................................................5

**PRELIMINARY STATEMENT**

This motion begins by ignoring the central allegation of the Amended Complaint: Plaintiff did not ask Alexandra Shapiro for a recommendation; he asked her to *represent him* in a federal criminal appeal in which his liberty was at stake. Shapiro declined and, in the same email, steered him to Nathaniel Marmur, whom she praised as "an excellent criminal appellate attorney." What she did not say was that the lawyer she was recommending occupied office space within her firm and made regular payments to her firm under a continuing financial arrangement. Plaintiff relied on the recommendation and paid $200,000 to retain Marmur.

The SAB Defendants do not dispute the core fact. They concede that Marmur occupied space within their firm and was, on their own account, their subtenant. The existence of an undisclosed financial relationship is therefore not in question. What remains are legal and factual questions that Rule 12(b)(6) does not permit the Court to resolve against Plaintiff: whether that undisclosed relationship gave rise to a duty to disclose, whether it was material, and whether Plaintiff has adequately alleged reliance and damages. Plaintiff has plausibly alleged each.

Accepting the Amended Complaint's allegations as true, Plaintiff has plausibly alleged that, under these circumstances, Shapiro had a duty to disclose the ongoing financial relationship—a duty arising both under the special-facts doctrine and from the rule that one who speaks must not tell only half the truth. Months later, when Plaintiff asked Shapiro directly whether she or her firm "were paid anything for referring Nate," her answer compounded the problem: she denied a "referral fee" while again omitting the financial arrangement that was the very subject of the question.

The motion does not meet those allegations on their own terms. Instead it asks the Court to accept the SAB Defendants' competing version of the facts—that the arrangement was an "ordinary" sublease with "fixed" rent, that it was "immaterial," that no "reasonable client" would have cared, and that Plaintiff could have uncovered it through "a Google search." Each of those is a contested factual proposition, and each must be resolved in Plaintiff's favor at this stage. *See*

1

*Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 328 (1st Dep't 1996) (materiality cannot be decided against the pleader unless the omitted fact is "so obviously unimportant…that reasonable minds could not differ"). In substance, the SAB Defendants ask the Court to conclude, as a matter of law and before any discovery, that an undisclosed financial relationship between the lawyer Plaintiff sought to retain and the lawyer she recommended in her place could not matter to any reasonable client paying $200,000 to defend his liberty. New York law does not permit that determination on a Rule 12(b)(6) motion. Discovery, not dismissal, is the proper next step.

**STANDARD OF REVIEW**

On a Rule 12(b)(6) motion the Court accepts all well-pleaded allegations as true and draws every reasonable inference for Plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). The Court may not weigh competing factual narratives or credit a movant's characterization of disputed facts over the plaintiff's, and a pro se plaintiff's submissions are read to raise the strongest arguments they suggest. *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018). At this stage the Court need not determine that Plaintiff's inference is the most likely one—only that it is plausible; "a court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171–76 (2d Cir. 2015) (reversing Rule 12(b)(6) dismissal of fraud claim where the district court "impos[ed] its own reading" of the allegations rather than reading them in the light most favorable to plaintiffs). Materiality, reasonable reliance, scienter, and causation are ordinarily fact questions not resolvable on the pleadings. *Swersky*, 219 A.D.2d at 328; *Roni LLC v. Arfa*, 74 A.D.3d 442, 444 (1st Dep't 2010), *aff'd*, 18 N.Y.3d 846 (2011).

**ARGUMENT**

2

## I.   SHAPIRO HAD A DUTY TO DISCLOSE HER FINANCIAL RELATIONSHIP WITH THE LAWYER SHE RECOMMENDED.

The question on which this motion turns is whether Shapiro had a legal duty to disclose her financial relationship with Marmur. That question cannot be analyzed as though Plaintiff merely asked Shapiro for the name of an appellate lawyer. He sought to retain Shapiro herself; the recommendation arose only because she declined the engagement. That fact distinguishes the ordinary referral and supplies the answer under two independent doctrines of New York law—the special-facts doctrine and the rule against misleading partial disclosure.

### A.   Plaintiff sought to retain Shapiro; he did not solicit a bare referral.

Plaintiff approached Shapiro to represent him. Hoffman Decl. Exh. A (Plaintiff writing that he "would like to discuss moving forward" with the representation). Shapiro declined and, in the same email, recommended Marmur as "an excellent criminal appellate attorney who has extensive experience with Second Circuit appeals." *Id.* Plaintiff retained Marmur "in direct reliance on this recommendation" and paid $200,000. Am. Compl. ¶¶ 32, 35. That posture—a recommendation by the very lawyer the client sought to hire, delivered as a substitute for her own representation—is what gives rise to the duty. Plaintiff plausibly alleges that a reasonable client who seeks to retain a lawyer would understand the lawyer's recommendation of substitute counsel to be independent unless informed otherwise.

This is not a novel proposition. New York has long recognized that "the fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view toward retention of the lawyer, although actual employment does not result." *Seeley v. Seeley*, 129 A.D.2d 625, 627 (2d Dep't 1987). That Shapiro ultimately declined the engagement therefore does not dispose of the duty question, as the SAB Defendants assume. Plaintiff approached Shapiro "with a view toward retention," and her response—declining while recommending Marmur—came within that consultation. The obligations attaching to that consultation, including the obligation not to make a materially misleading recommendation, are the

3

predicate for the duty Plaintiff alleges. *Seeley* arose in the disqualification context, and Plaintiff does not contend it independently creates tort liability; he cites it for the settled premise that a lawyer's obligations to a prospective client can attach before, and independent of, any formal engagement.

The SAB Defendants repeatedly analyze this case as though Plaintiff cold-called Shapiro seeking the name of an appellate lawyer. That is not what happened. Plaintiff consulted Shapiro with a view toward retaining her to defend his liberty. Under *Seeley*, New York recognizes that a lawyer's obligations may attach during precisely that kind of preliminary consultation. And it was during that consultation—in the very email declining the engagement—that Shapiro made the allegedly misleading recommendation. The duty and the alleged breach thus arise from the same exchange. Once those obligations attached during the preliminary consultation, Plaintiff plausibly alleges that Shapiro breached them by making a recommendation while omitting a material fact known only to her and Marmur.

That a prospective consultation can carry obligations of trust is not anomalous. New York already extends the duty of confidentiality to the pre-engagement consultation, protecting information a prospective client shares even where no representation results. *See* N.Y. R. Prof'l Conduct 1.18(b). Plaintiff does not contend that Rule 1.18 supplies his cause of action. He offers it only as confirmation that the pre-engagement consultation is a recognized relationship of trust— context bearing on whether a reasonable client would regard the omitted financial stake as material, not a substitute for the common-law elements of his claim.

### B.  The special-facts doctrine imposed a duty because the relationship was peculiarly within the SAB Defendants' knowledge.

A duty to disclose arises under the special-facts doctrine where "one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." *Swersky*, 219 A.D.2d at 327. The doctrine requires that the omitted fact be "peculiarly within the

4

knowledge" of the defendant and not discoverable through "the exercise of ordinary intelligence." *Jana L. v. W. 129th St. Realty Corp.*, 22 A.D.3d 274, 278 (1st Dep't 2005).

A private financial arrangement between two law firms is the paradigm of information peculiarly within the parties' own knowledge. Whether Marmur paid Shapiro's firm, how much, on what terms, and whether that arrangement created financial incentives relevant to the recommendation are facts known to Shapiro and Marmur alone. Plaintiff alleges the arrangement "existed at the time of the August 2021 referral and continued throughout the representation period." Am. Compl. ¶ 33. The SAB Defendants' answer—that Plaintiff could have learned all of this from the firms' websites—is addressed in Point III; a shared street address discloses neither the existence of a financial relationship nor its terms.

### C. The recommendation was a misleading partial disclosure.

Independently, a duty to disclose arises when a party "has undertaken to mention a relevant fact" and then gives "only half of the truth." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). That rule traces to Judge Cardozo: one who speaks must not "suppress[] the facts that the buyer needs to know" and tell "half of the truth." *Junius Constr. Corp. v. Cohen*, 257 N.Y. 393, 400 (1931) (Cardozo, C.J.). The Second Circuit, applying New York law, has reaffirmed that even absent a fiduciary relationship a duty to disclose arises where "one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995). By vouching for Marmur as "excellent," Shapiro undertook to speak to the wisdom of retaining him. Having spoken, she could not omit the one fact a client would most want to weigh: that she had a continuing financial relationship with the lawyer she was praising. A statement "stating the truth so far as it goes" is nonetheless actionable where it is "materially misleading because of [the] failure to state additional or qualifying matter." *Brass*, 987 F.2d at 150 (quoting Restatement (Second) of Torts § 529). Plaintiff plausibly alleges that a reasonable client would understand such

5

a recommendation to be independent unless informed otherwise, and whether Shapiro's statement crossed the line into a misleading half-truth is a question of fact.

New York's appellate courts continue to apply this doctrine to sustain fraud claims at the pleading stage. In *Juman v. Louise Wise Servs.*, 254 A.D.2d 72, 74 (1st Dep't 1998), the First Department held that a defendant's "partial disclosure" of other information, "assuming arguendo that all such disclosed information was literally true," was actionable where it "created a false impression" and the plaintiffs were dependent on the defendant for the relevant facts. So too in *DIRECTV, LLC v. Nexstar Broadcasting, Inc.*, 2021 NY Slip Op 06539 (1st Dep't 2021), where the First Department sustained a fraud claim resting expressly on "the theory of a misleading partial disclosure," citing *Juman*. And in *Basis Yield Alpha Fund (Master) v. Goldman Sachs Group, Inc.*, 115 A.D.3d 128, 137 (1st Dep't 2014), the First Department confirmed that "even in the absence of any affirmative misrepresentation or any fiduciary obligation, a party may be liable for nondisclosure where it has special knowledge or information not attainable by plaintiff, or when it has made a misleading partial disclosure." The same logic applies here. By recommending Marmur as "excellent" while omitting her financial relationship with him, Shapiro is alleged to have created a false impression of an independent recommendation, on which Plaintiff—dependent on her for an assessment of substitute counsel—reasonably relied.

The SAB Defendants repeatedly argue that Plaintiff ultimately cannot prove the financial relationship affected the recommendation. That is not the question presented. Rule 12(b)(6) asks whether Plaintiff has plausibly alleged facts from which such an inference may reasonably be drawn. Whether discovery ultimately supports or refutes that inference is a question for a later stage of the case.

### D. The referral cases the SAB Defendants invoke confirm a duty of due care; Plaintiff alleges its breach.

To the extent the SAB Defendants invoke New York's standard for attorney referrals, that standard supports Plaintiff rather than defeating him. They invoke the negligent-referral cases as

6

though those cases establish the absence of a duty; they establish the opposite. New York law provides that a referring attorney is not the guarantor of the referred lawyer's work "provided that the referral was made in the exercise of due care." *Wildermann v. Wachtell*, 149 Misc. 623, 624–25 (Sup. Ct. N.Y. Co. 1933), *aff'd,* 241 A.D. 812 (1st Dep't 1934). The rule is framed as a duty—the referral must be made with due care—not as the absence of one. Plaintiff alleges that Shapiro failed to exercise even minimal due care. A lawyer asked to defend a person's liberty cannot steer that prospective client to another lawyer while concealing an ongoing financial relationship with that lawyer and still claim, as a matter of law, to have exercised due care. Whether that conduct satisfied New York's standard is a factual question that cannot be resolved on a Rule 12(b)(6) motion.

The cases in this line do not hold otherwise; they are distinguishable because each assumes the referral itself was properly made and concerns only whether the referring lawyer answers for the *referred* lawyer's later negligence. *See, e.g., Wildermann*, 149 Misc. at 624–25 (referring attorney not liable for out-of-state counsel's negligence where counsel was selected with the client's approval). Plaintiff's theory is different in kind. He does not claim that Shapiro should have investigated Marmur's competence more thoroughly, or that she is vicariously liable for how Marmur performed. He alleges that Shapiro concealed her own financial conflict while recommending Marmur. No amount of investigation into Marmur's résumé could have revealed a financial relationship known only to Shapiro and Marmur. The alleged breach is not a failure to investigate the referred lawyer—it is a failure to disclose the referring lawyer's own conflicting financial interest. That distinction places this case outside the negligent-referral authorities and squarely within the law of fraudulent concealment.

Notably, the SAB Defendants cite no New York case holding that a lawyer may recommend substitute counsel while concealing the lawyer's own financial relationship with that counsel. Their authorities address whether a referring lawyer later becomes liable for the referred lawyer's malpractice. Plaintiff's claim concerns a different question entirely: whether a lawyer may induce a prospective client to retain recommended counsel through a materially misleading omission regarding the referring lawyer's own financial interest. The negligent-referral cases do

7

not answer that question; the fraudulent-concealment cases discussed above—*Swersky*, *Brass*, and *Roni*—do. If New York's common-law fraud principles governing misleading omissions apply anywhere, they apply to a lawyer who conceals her own financial interest in the very counsel she recommends. Nor would recognizing a duty here require any new doctrine. New York's highest court has already held that a professional whose loyalties are divided by a personal stake in a transaction must disclose that interest to the party to whom duties are owed. *Dubbs v. Stribling & Assocs.*, 96 N.Y.2d 337, 340–41 (2001). That principle is not new. Nearly a century ago, the Court of Appeals held that where a person serves divided interests, "the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all its stark significance," and that a disclosure too "indefinite and ambiguous" to do so is no disclosure at all. *Wendt v. Fischer*, 243 N.Y. 439, 443 (1926) (Cardozo, J.). *Dubbs* and *Wendt* did not involve an attorney referral, but they reflect the same common-law principle Plaintiff invokes—a principle that condemns precisely the kind of partial, ambiguous response Shapiro is alleged to have given when asked whether she had been "paid anything." The Court is asked to apply a recognized duty to these facts, not to create one.

This is, at bottom, a dispute about which inference to draw from the same undisclosed facts. Those facts permit more than one reasonable reading: that the arrangement was an ordinary commercial tenancy of no moment to the recommendation; that it created an ongoing financial dependence; or that it reflected a significant and continuing business relationship that a reasonable client would have wanted disclosed before relying on the recommendation. At the pleading stage the Court must draw the inference favorable to Plaintiff, not the one favorable to the movant. *Anderson News*, 680 F.3d at 185; *Loreley*, 797 F.3d at 171–76. That alone requires denial of the motion as to the duty and materiality elements.

8

## II.   MATERIALITY IS A JURY QUESTION THAT CANNOT BE DECIDED ON THE PLEADINGS.

The SAB Defendants' principal argument is that the financial relationship was "immaterial." That argument both misstates the test and asks the Court to decide a question reserved for the factfinder.

New York applies an objective materiality standard: an omission is material if there is "a substantial likelihood that disclosure of the omitted fact would have been viewed by the reasonable" person "as having significantly altered the total mix of information." *State v. Rachmani Corp.,* 71 N.Y.2d 718, 726–27 (1988). A fact "may not be dismissed as immaterial unless it is so obviously unimportant…that reasonable minds could not differ on the question of [its] importance," *Swersky*, 219 A.D.2d at 328, and materiality "is normally an issue for the jury," *Brunetti v. Musallam,* 11 A.D.3d 280, 281 (1st Dep't 2004). The question, then, is not whether every client would have cared—it is whether a reasonable client *could* have cared. That is a far lower threshold, and it is comfortably met.

New York courts have repeatedly held that undisclosed financial incentives behind a recommendation are material, or at least raise a jury question. *Roni LLC v. Arfa* is directly on point. There, promoters recommended that plaintiffs invest in real-estate ventures without disclosing the commissions the promoters stood to receive. The First Department held that the materiality of those undisclosed financial incentives could not be resolved as a matter of law, because "it cannot be said as a matter of law that knowledge of these commissions would not have influenced [plaintiffs'] decision," 74 A.D.3d 442, 444 (1st Dep't 2010), and the Court of Appeals affirmed, holding that the complaint—alleging that the promoters "deliberately concealed" the payments they received—withstood the motion to dismiss, *aff'd,* 18 N.Y.3d 846 (2011). The principle is not confined to "commissions"; *Roni* stands for the broader proposition that an undisclosed financial incentive behind a recommendation is a classic question of fact on materiality. The parallel to this case is close: Shapiro recommended Marmur while allegedly maintaining an ongoing financial

9

relationship with him, and "it cannot be said as a matter of law" that a client paying $200,000 to entrust his federal criminal appeal to recommended counsel would not have wanted to know of that relationship.

The Court of Appeals has likewise recognized, outside the attorney context, that a professional whose "interests or loyalties are divided due to a personal stake in the transaction" must "disclose to the principal the nature and extent of the [] interest in the transaction or the material facts illuminating the [] divided loyalties." *Dubbs v. Stribling & Assocs.*, 96 N.Y.2d 337, 340–41 (2001). That a recommender's undisclosed personal financial stake is the kind of fact New York treats as disclosable confirms that its materiality here cannot be rejected on the pleadings.

The SAB Defendants' reliance on *People ex rel. Cuomo v. Wells Fargo Insurance Services*, 16 N.Y.3d 166 (2011), is misplaced. *Wells Fargo* addressed materially different allegations and does not hold that undisclosed financial relationships behind professional recommendations are immaterial as a matter of law. The claim there failed for want of any allegation that customers received "inferior, or overpriced" services, *id.* at 170, whereas Plaintiff alleges throughout that the representation was deficient—substantive work delegated to a non-attorney, promised filings never made, and the engagement abandoned at the deadline. Am. Compl. ¶¶ 17–24, 61.

The SAB Defendants also argue that the relationship ultimately had no effect on Plaintiff's decision to retain Marmur. That argument misstates the claim. The question is not whether disclosure necessarily would have changed the outcome; it is whether a reasonable client could have considered the undisclosed relationship important in deciding whether to retain recommended counsel. That is the materiality inquiry under New York law, *Rachmani*, 71 N.Y.2d at 726–27, and it is satisfied here.

## III.  THE "GOOGLE SEARCH" ARGUMENT FAILS BECAUSE A SHARED ADDRESS DOES NOT DISCLOSE A FINANCIAL RELATIONSHIP.

The SAB Defendants argue that because the two firms' websites list the same address, the relationship was a "matter of public record" that defeats any duty to disclose. But a shared address

10

is not the omitted fact. What Plaintiff alleges was concealed is not *where* Marmur's office sits, but the *financial relationship*—the regular payments from Marmur to Shapiro's firm and the continuing financial relationship those payments created, which Plaintiff alleges was material to the recommendation. Am. Compl. ¶¶ 33, 118. No website disclosed that. Two lawyers may share a building for many reasons; the address says nothing about who pays whom, how much, or whether the arrangement colored the recommendation.

Consider an analogy. Suppose a trusted advisor recommends a particular sandwich shop but does not disclose that she is the shop's landlord and collects its rent. Most people would reasonably expect that financial relationship to be disclosed before relying on the recommendation. That public records might reveal the ownership does not mean every reasonable person must search property records before accepting an otherwise trusted recommendation. People rely on recommendations without conducting forensic investigations into the recommender's hidden financial interests. The "exercise of ordinary intelligence," *Jana L.*, 22 A.D.3d at 278, does not require a prospective client to investigate the commercial leasing relationships between attorneys before relying on the recommendation of the lawyer he initially sought to retain.

Defendants' position would create a remarkable rule. Before relying on an attorney's recommendation of substitute counsel, every prospective client would be required to compare law-firm addresses, investigate whether the lawyers share office space, determine whether a lease or sublease exists, and uncover the financial terms of that arrangement—all to decide whether the recommendation was independent. Nothing in New York law requires prospective clients to investigate undisclosed commercial relationships between attorneys before relying on a professional recommendation.

The expectation of disclosure is greater, not lesser, when the recommendation concerns legal representation in a federal criminal appeal affecting the client's liberty. In any event, whether the relationship was reasonably discoverable through ordinary diligence is itself a fact question. *See ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 1043, 1045 (2015). The SAB Defendants overread *Womack v. Capital Stack, LLC*, 2019 WL 4142740 (S.D.N.Y. Aug. 30, 2019).

11

*Womack* addressed public disclosure of the omitted fact itself—there, the omitted information was "prominently listed" on the defendant's website, *id.* at \*9. Here, by contrast, Plaintiff alleges the omitted financial relationship was never publicly disclosed at all; what the websites showed was a shared address, not the arrangement. *Womack* thus confirms the governing distinction rather than supplying a defense.

## IV.   THE LABEL ON THE ARRANGEMENT IS IMMATERIAL, AND THE SAB DEFENDANTS WITHHOLD THE TERMS THAT WOULD PERMIT THE COURT TO EVALUATE IT.

The SAB Defendants describe the relationship as an "ordinary sublease" with "fixed rent," as though the absence of a referral fee ends the matter. But Plaintiff never alleges that a referral fee was the only material fact. Plaintiff alleges that Shapiro recommended Marmur without disclosing that the lawyer she recommended was simultaneously making continuing payments to her firm under an ongoing financial arrangement. Whether that arrangement is labeled a sublease, a license, an office-sharing agreement, or some other financial relationship is immaterial at the pleading stage. The existence, nature, and significance of the financial relationship are factual issues for discovery.

That point exposes a telling asymmetry. The SAB Defendants repeatedly characterize the relationship as "trifling" while withholding the very information that would permit the Court to evaluate that characterization. The motion never states the monthly rent, the total value of the arrangement, its duration, any concessions or discounts, the portion of the firm's space Marmur occupied, or any amendments or renewals. In short, the SAB Defendants ask the Court to accept adjectives in place of facts. If the amount truly demonstrated that the relationship was immaterial, the SAB Defendants could simply have disclosed it. They chose not to. Notably, the SAB Defendants do not contend that Marmur received discounted, nominal, or accommodation rent; they describe an arrangement under which Marmur pays to occupy office space in midtown Manhattan, one of the most expensive commercial rental markets in the world. Drawing the

12

reasonable inferences in Plaintiff's favor, as Rule 12 requires, the continuing payments plausibly created an ongoing financial relationship that a reasonable client could consider important. The agreement is a document in the SAB Defendants' possession; the place to establish its terms is summary judgment, on a sworn record. On a motion to dismiss, the Court must take as true Plaintiff's allegation that the payments gave Shapiro an ongoing financial relationship with Marmur that Plaintiff alleges was material to the recommendation. Am. Compl. ¶ 33.

The motion repeatedly conflates two different questions: whether the arrangement ultimately proves legally significant, and whether Plaintiff has plausibly alleged facts from which its significance may reasonably be inferred. Only the latter question is before the Court. Discovery may ultimately show the arrangement was minimal or substantial; Rule 12(b)(6) requires only that Plaintiff plausibly allege facts entitling him to attempt to prove his claim.

## V.   RELIANCE, INTENT, DAMAGES, AND CAUSATION ARE ADEQUATELY PLEADED AND PRESENT FACT QUESTIONS.

**Reliance.** The SAB Defendants dismiss Shapiro's recommendation as "puffery" too indefinite to support reliance. But Plaintiff does not allege that he retained Marmur because Shapiro called him "excellent" in the abstract; he alleges that he sought to retain Shapiro herself, that she declined and directed him to Marmur, and that he retained Marmur "in direct reliance on this recommendation." Am. Compl. ¶¶ 32, 121. A solicited referral from the very lawyer the client approached for representation is not an unsolicited advertisement, and whether reliance on it was reasonable is itself a fact question. *ACA Fin. Guar.*, 25 N.Y.3d at 1045.

**Intent.** Rule 9(b) permits intent to be "alleged generally," and is satisfied by facts showing motive and opportunity or strong circumstantial evidence of conscious misbehavior or recklessness. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006). Shapiro had a continuing financial relationship with Marmur, from which Plaintiff alleges an inference of motive and intent. Am. Compl. ¶¶ 33, 118. And the March 2, 2022 email supplies pointed circumstantial evidence of consciousness of the concealed fact: asked directly whether she was "paid anything" in

13

connection with the referral, Shapiro answered only as to "referral fees," omitting the arrangement that actually existed. Am. Compl. ¶¶ 34, 119.

**Damages and causation.** Plaintiff alleges that, in reliance on a referral tainted by an undisclosed financial conflict, he paid $200,000 and received a representation the complaint alleges was deficient in numerous respects. Am. Compl. ¶¶ 17–24, 61, 123. The difference between what he paid and the value of what he received is a classic out-of-pocket loss. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996). The SAB Defendants' contrary premise—that Plaintiff received full value—is the disputed question at the heart of this case. Their "referral chain" causation argument fares no better: the foreseeable and intended consequence of Shapiro's recommendation was precisely that Plaintiff would retain and pay Marmur, which is what occurred, and proximate cause is ordinarily a fact question. *Vandashield Ltd. v. Isaacson*, 146 A.D.3d 552, 553 (1st Dep't 2017).

## VI. PLAINTIFF'S CLAIM IS FRAUD BY OMISSION—NOT A RULE 7.2 REFERRAL-FEE CLAIM.

The SAB Defendants recast Plaintiff's claim as an allegation that Shapiro took an undisclosed "referral fee" in violation of Rule 7.2, then defeat that strawman by noting that fixed rent is not a referral fee. That is not Plaintiff's claim. Plaintiff alleges an undisclosed *ongoing financial relationship* between the attorney he sought to retain and the attorney she recommended, followed by a March 2022 response that denied a referral fee while omitting that continuing relationship. The wrong is the nondisclosure of a material financial interest behind a professional recommendation, and the misleading partial answer to a direct question—a common-law fraud theory governed by *Swersky*, *Brass*, and *Roni*. The Court need not resolve any ethics-rule dispute to deny this motion; it need only recognize that the complaint pleads the elements of fraudulent concealment. The source of the duty here is not the Rules of Professional Conduct; it is New York common-law fraud principles governing misleading omissions. The attorney-client setting

14

supplies the factual context in which the omission occurred, but the cause of action arises under common law and does not rise or fall with Rule 7.2.

To the extent the SAB Defendants invoke professional norms—arguing that office rent is not a prohibited "referral fee" under Rule 7.2—those norms cut against them as much as for them. The profession treats undisclosed financial relationships accompanying referrals as a matter for caution, not indifference. The New York City Bar has recognized that a lawyer making a referral "must not make any material misrepresentations about the lawyers to whom she is referring the prospective client" and owes the prospective client a duty to act in good faith. N.Y.C. Bar Formal Op. 2016-1. These opinions do not themselves create a tort duty, and Plaintiff does not suggest otherwise. But they confirm that an undisclosed financial relationship behind a recommendation of counsel is the sort of fact the profession regards as significant—which only reinforces that its materiality cannot be rejected as a matter of law at the pleading stage.

The point can be put more directly: Plaintiff's claim does not depend on Shapiro being a lawyer. The same omission would be material outside the attorney-client setting. If a landlord recommended a particular restaurant without disclosing that the restaurant was its tenant and paid it monthly rent; if an accountant recommended an investment adviser without disclosing an ongoing financial relationship with that adviser; or if any trusted professional recommended a service provider while concealing a continuing financial interest in that provider—the question would be the same: whether the undisclosed financial relationship was material to the recommendation. As in the "Google search" analysis above, the omission is not the shared address; it is the financial relationship. That the recommendation here arose during a consultation for representation in a federal criminal appeal only strengthens the claim; it is not the source of it.

The March 2022 email illustrates the theory. Plaintiff did not ask whether Shapiro received a "referral fee." He asked whether Shapiro or her firm "were paid anything for referring Nate." Hoffman Decl. Exh. B. Shapiro answered a narrower question than the one asked, denying a "referral fee" while saying nothing of the regular payments from Marmur to her firm. *Id.*; Am. Compl. ¶¶ 34, 119. The alleged omission therefore did not merely fail to volunteer additional

15

information; it gave an incomplete answer to the precise question Plaintiff posed. Whether regular rent payments from the recommended lawyer fell within the ordinary understanding of being "paid anything" is, at minimum, a factual question unsuitable for resolution on a motion to dismiss. A technically accurate answer can be actionable precisely because it omits the fact that gives the question its point. *Brass*, 987 F.2d at 150. That the email post-dated the $200,000 payment does not defeat the claim: it is pleaded as an independent, separately accruing fraud, Am. Compl. ¶ 122, and as evidence of the concealment's continuity and of intent.

## VII.   THE MOTION SEEKS FACTUAL FINDINGS THAT RULE 12 DOES NOT PERMIT.

In substance, the relief the SAB Defendants seek requires a series of factual findings, every one contested: that the arrangement created no conflict; that Shapiro had no financial incentive; that the relationship was immaterial; that Plaintiff suffered no damages; that he did not reasonably rely; that Marmur's work gave him full value; and that the relationship was discoverable through ordinary diligence. Those are merits determinations for summary judgment or trial on a developed record. The motion is, in effect, a motion for summary judgment filed before any discovery and without a sworn record. The answer to such a motion is not dismissal—it is discovery, in which Plaintiff may test the SAB Defendants' factual assertions about the arrangement, its terms, and its influence on the referral.

The SAB Defendants possess the documents necessary to establish the nature, duration, value, and significance of the financial relationship, and those facts are uniquely within their possession. Discovery would reveal, among other things, the lease or sublease agreement, the amount and timing of the payments, any discounts or concessions, communications concerning the arrangement, and whether the relationship was considered when the recommendation was made. Those are precisely the kinds of factual issues that should not be resolved on a Rule 12(b)(6) motion. Plaintiff does not contend that he must prove the economic significance of the arrangement now—only that its nature and significance are factual matters uniquely within the SAB

Defendants' knowledge, to be explored through discovery rather than decided on the pleadings. It is telling that the SAB Defendants repeatedly characterize the arrangement as "ordinary," "fixed," and "immaterial," yet ask the Court to accept those factual characterizations without producing the agreement or disclosing its terms. Rule 12(b)(6) is not a vehicle for accepting a movant's characterization of documents it has not produced. The SAB Defendants' own label—that Marmur is merely a "subtenant" in an arm's-length sublease—is itself a contested factual characterization. The Amended Complaint alleges an ongoing arrangement in which Marmur occupies space within Shapiro's firm and makes regular payments to it; whether the true relationship is the arm's-length tenancy the SAB Defendants describe, or something more integrated and continuing, is a question the underlying documents and communications will answer. Plaintiff need not establish the precise structure of the arrangement at the pleading stage; he need only allege facts from which its existence and materiality may plausibly be inferred, leaving its exact nature for discovery. Whether the arrangement ultimately proves economically insignificant or economically substantial is precisely the kind of factual question that discovery exists to answer. At the pleading stage, Plaintiff need only plausibly allege that the continuing financial relationship was material; he has done so.

**CONCLUSION**

At the pleading stage, the materiality question is straightforward: the question is not whether every client would have cared—it is whether a reasonable client could have cared. A client paying $200,000 to entrust his liberty to recommended counsel plainly could. That is enough to proceed.

Plaintiff has plausibly alleged that the lawyer he sought to retain instead recommended another lawyer without disclosing an ongoing financial relationship, that Plaintiff relied on that recommendation, and that he suffered damages. Whether Plaintiff can ultimately prove those allegations is for discovery and, if appropriate, summary judgment or trial. It is not a question that Rule 12(b)(6) permits the Court to resolve now. The motion should be denied. To the extent the

17

Court concludes that Count IX is deficient because the alleged facts support a different common-law theory than fraud by omission as presently pleaded—for example, fraudulent inducement, which the same facts would support, given that the undisclosed conflict is alleged to have induced Plaintiff to enter the $200,000 retainer—Plaintiff respectfully requests leave to amend to conform the pleading to the Court's ruling. Leave to amend should be freely given under Rule 15(a)(2), particularly for a pro se litigant whose factual allegations state a wrong even if the Court would characterize its legal label differently. Because this is the first motion directed to the Amended Complaint's current theory, and because any deficiency the Court identifies could likely be cured by more specific factual allegations or a different common-law characterization of the claim, any dismissal should be without prejudice and with leave to replead.

Dated:  June 30, 2026

     Miami Beach, Florida

                    Respectfully submitted,

                    /s/ Ari Teman

                    Ari Teman

                    Plaintiff, Pro Se

18

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2026, I caused a true and correct copy of the foregoing Plaintiff's Memorandum of Law in Opposition to the Joint Motion to Dismiss of Defendants Shapiro Arato Bach LLP and Alexandra Shapiro to be served upon counsel of record for all Defendants via the Court's CM/ECF system, which will send notification of such filing to all counsel of record, and by email to counsel for the SAB Defendants at the addresses listed on the docket.

/s/ Ari Teman

Ari Teman

Plaintiff, Pro Se